SCOTT E. BRADFORD, OSB #062824
United States Attorney
District of Oregon
**KATE A. ROCHAT, OSB #184324**
Kate.Rochat@usdoj.gov
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA | 3:25-cr-00439-AN |
| v. | |
| TRENTEN BARKER, | UNITED STATES' SENTENCING MEMORANDUM |
| Defendant. | |

## I.    INTRODUCTION

On June 11, 2025, defendant Trenten Barker lit a flare and threw it into a pile of flammable debris stacked against a federal building. His actions resulted in thousands of dollars in property damage and posed a substantial danger to human life. Defendant will be before the Court for sentencing after pleading guilty to a one-count Information. The Court should impose a low-end of the guidelines sentence of imprisonment followed by 3 years of supervised release, and a $100 fee assessment. This recommended sentence is sufficient but not greater than necessary under 18 U.S.C. § 3553(a) to accomplish the goals of sentencing. It fairly balances the nature, circumstances, and seriousness of the offense with defendant's history and characteristics and the need to protect the public, provide deterrence, and promote respect for the law.

II.     **FACTUAL AND PROCEDURAL BACKGROUND**

   A.     **Protests Outside of the Immigration and Customs Enforcement Building**

The Immigration and Customs Enforcement Building (ICE) is located on Macadam Ave, Portland, within the District of Oregon. (PSR ¶ 15). The building, which is leased by the General Services Administration, has an attached gate to control the entry and exit of vehicles. (PSR ¶¶ 15, 16, 17). The vehicle gate, pictured below, does not simply surround the building's grounds but connects directly to portions of the building that can be occupied.



*Figure 1 Image of the ICE building and vehicle gate taken from S. Bancroft Street prior to June 11, 2025*

Beginning in June of 2025, there have been frequent protests outside of the ICE building (PSR ¶ 15). Often, these protests are peaceful displays of protected speech. However, on occasion, individual protestors become violent. June 11, 2025, was one such day. On that day,

protesters gathered outside of the building. (PSR ¶ 15). Inside, Federal Protective Service (FPS) guarded the building and watched the crowd through security system cameras (PSR ¶ 16). Portland Police Bureau (PPB) officers also monitored the protest. (PSR ¶ 16). At around 9:50pm, some protesters began moving large debris to block the vehicle gate around the building. *Id*. They used materials in the surrounding area, to include trash, tree limbs, picnic tables and other miscellaneous items. *Id*.

    B.    **Defendant's Conduct on June 11, 2025**

On June 11, 2025, the defendant placed a flare inside of his backpack and joined protesters outside of the ICE facility. While others moved large debris to block the vehicle gate around the building, the defendant stood near the driveway of the facility. He retrieved the flare from his backpack, lit it, and threw it directly onto the flammable pile of debris that was against the building's attached gate. (PSR ¶ 17).

The defendant's flare lit the debris on fire. As other protesters continued to move items in front of the gate, the fire grew. (PSR ¶ 17). Shortly thereafter, federal officers, who were on the grounds of the federal building responded. (PSR ¶ 18). They attempted to put out the flames but were unsuccessful. *Id*. It wasn't until a larger fire extinguisher was employed that officers were able to stop the fire. *Id*. The damage to the gate was extensive and estimated at a monetary value of $8,820.

By the time that the fire was extinguished, the defendant had retreated into the crowd of protesters (PSR ¶ 17). It took Law enforcement roughly an hour to identify and apprehend the defendant (PSR ¶ 19).

    C.    **The Charges and Plea Agreement**

**United States' Sentencing Memorandum**　　　　　　　　　　　　　　　　　　　　　　　　**Page 3**

On October 22, 2025, Defendant was charged by information with one count of Arson, in violation of 18 U.S.C. 844(f)(1) (ECF 25). On November 19, 2025, defendant pleaded guilty to the one-count information pursuant to a plea agreement (ECF 34, 35, 36). In exchange, the government agreed to recommend a 3-level downward variance for early resolution and in consideration of 18 U.S.C. §§ 3553(a)(1) factors. *Id.*

### III.   GUIDELINES AND THE PSR

The parties do not have any outstanding objections to the PSR. The government, however, recommends that the Court apply additional variance that is not reflected in the PSR. Pursuant to the plea agreement, the government recommends that the defendant receive a two-level downward adjustment to his offense level under U.S.S.G. § 3E1.1(a) and a one-level downward adjustment under U.S.S.G. § 3E1.1(a). The government also moves for a three-level downward variance in reflection of the defendant's early resolution of the matter and in consideration of 18 U.S.C. §3553(a)(1) mitigation.

#### A.   Acceptance of Responsibility

U.S.S.G. § 3E1.1(a) applies when the defendant "clearly demonstrates acceptance of responsibility for his offense." Courts may consider, among other factors, whether the defendant truthfully admitted the conduct comprising the offenses of conviction and relevant conduct, voluntarily terminated or withdrew from criminal conduct, voluntarily paid restitution, voluntarily surrendered to authorities, assisted authorities in the recovery of fruits or instrumentalities of the offense, and the timeliness of the defendant's conduct in manifesting the acceptance of responsibility. U.S.S.G. § 3E1.1(a) cmt. n.1.

The PSR found that defendant demonstrated an acceptance of responsibility and that he should receive a two-level downward adjustment to his offense level under U.S.S.G. § 3E1.1(a)

**United States' Sentencing Memorandum**                                                                                                  **Page 4**

(PSR ¶ 33).   The United States agrees and moves for an additional one-level downward adjustment pursuant to U.S.S.G. § 3E1.1(b), as anticipated and reflected in in the PSR calculation. (PSR ¶ 34).

### B.     Additional Variance for Early Resolution and 18 U.S.C. §3553(a)(1)

The government recommends an additional three-level variance in reflection of the defendant's early resolution of the criminal case and in consideration of 18 U.S.C. §3553(a)(1) mitigation. The defendant, by resolving his case in a timely manner, has saved substantial resources that otherwise would be expended to resolve his case.

Defendant is a criminal history category I because he has no criminal history category points. (PSR ¶ 39). The United States agrees with U.S. Probation's recommendations regarding supervised release and recommends a low-end of the guidelines term of imprisonment.

### IV.    UNITED STATES' RECOMMENDED SENTENCE

The Court should impose a low-end sentence of imprisonment to be followed by 3 years of supervised release, and a $100 fee assessment. Despite the severity of the defendant's crime, a low-end sentence is appropriate because, under the low-end of the applicable guidelines, the defendant's exposure is still multiple years in prison. A shorter term than the low-end would not reflect the seriousness of the offense charged, the disregard for human safety and life that the defendant's behavior evinces, and the disruption to the function of public institutions.

The nature and circumstances of this offense demonstrate an exceptional level of danger, warranting a significant custodial sentence. The ICE building and the surrounding campus were in use when the defendant deliberately lit the structure on fire. The building's design creates no meaningful structural barrier between the outside gate and the outside of the rooms that can be occupied by employees and visitors, meaning that once an ignited, a fire could quickly jump

from the outside gate to the core building, penetrating potentially occupied areas with smoke and flames. Fire is inherently unpredictable and uniquely dangerous: once ignited, it can spread rapidly, produce toxic smoke, and spreads panic, which can lead to further injury. By setting fire to an occupied government structure, the defendant endangered not only federal property, but also every person inside of the building, any first responders or emergency personnel, and other protesters.

The danger was compounded by the presence of a hostile crowd surrounding the facility at the time that the defendant committed the offense. This volatile environment increased the risk that the evacuation points of the building would be blocked or obstructed, emergency responders delayed, and an otherwise controllable situation turned into a tragedy. The defendant's conduct therefore threatened not only human life but also the safe functioning of a federal function charged with serving the public.

The § 3553 factors strongly support a custodial sentence at the low-end of the guidelines. The defendant may claim to have acted impulsively but his behavior was not impassioned symbolic protest; it was unacceptable recklessness, callous indifference to human life, and a blatant disregard for the rule of law. Furthermore, his youth and lack of criminal history do not outweigh the gravity of his actions. Arson is not a minor crime; it is an inherently life-threatening act with risks that are obvious to any person regardless of age or criminal history. When conduct carries a substantial risk of mass harm, the need for deterrence, protection for the public, and respect for the law outweigh personal mitigating characteristics.

For these reasons, a sentence at the low end of the advisory guidelines range is sufficient, but not greater than necessary, to comply with the purposes of sentencing set forth in § 3553. It appropriately reflects the seriousness of the offense, promotes respect for the law, and ensures

that others will be dissuaded from engaging in politically motivated arson, or will be met with meaningful consequences.

## V.     VICTIM IMPACT AND RESTITUTION

The defendant has agreed to pay restitution. As of the writing of this memorandum, the United States calculates the amount of restitution owed is $8,820. The United States will inform the Court and defendant if it received a Victim Impact Statement in advance of sentencing.

## VI.    CONCLUSION

Based on the foregoing, the Court should sentence defendant to: (1) the low-end of the guidelines, (2) a three-year term of supervised release; and (3) a $100 special assessment.

Dated: February 25, 2026                    Respectfully submitted,

SCOTT E. BRADFORD
United States Attorney

*/s/ Kate A. Rochat*
KATE A ROCHAT, DCB #184324
Assistant United States Attorneys